[File No. 6604.]

STATE OF NORTH DAKOTA, Respondent, v. PETER J. HOLLINGER, Appellant.

(287 N. W. 225.)

Opinion filed July 19, 1939.

*C. H. Starke,* for appellant.

*T. F. Murtha,* State's Attorney, for respondent.

CHRISTIANSON, J.  This is an appeal by the defendant from a judgment of the district court of Stark county rendered in an action instituted under the Uniform Illegitimacy Act (Laws 1923, chap. 165; 1925 Supp. §§ 10,500a1–10,500a37).  The action was instituted upon the complaint of one Anna K. Martin, charging: "That she is an unmarried female; that she gave birth on the 4th day of April, A. D. 1937, to a child now living, which child was begotten by one Peter Hollinger, above named defendant and that said Peter Hollinger is the father of said child; that the intercourse resulting in the birth of said child was had on or about the 30th day of June, A. D. 1936, in Stark county, North Dakota; that the complainant was an unmarried female at the time of said intercourse and has been an unmarried female ever since."

The defendant denied the charge set forth in the complaint, and the issues thus framed were tried to the court, without a jury.  The trial court found as a fact that the defendant is the father of the child, and ordered judgment to be entered against him declaring paternity and for the support of the child, and requiring the defendant to give security by bond for the payment of the judgment, and providing that in event the defendant failed to furnish such bond or make such payment "he may be committed to jail as provided by law."  Judgment was entered accordingly, and the defendant has appealed from the judgment and demands a trial anew in this court.

Appellant contends:

1. That the evidence is insufficient to justify the findings and the judgment entered pursuant thereto.

2. That the provisions in the judgment requiring the defendant to give security by bond for the payment of the judgment, and that in event he fails to give such bond or make such payment "he may be committed to jail as provided by law" violate rights guaranteed to the defendant by the state Constitution.  These contentions will be considered in the order stated.

(1) It is undisputed that the complaining witness gave birth to a

child on April 4th, 1937. It is, also, undisputed that she now is, and always has been, unmarried. She is a resident of Stark county in this state, and has resided in that county practically her whole life. In June, 1936, she lived with her parents on a farm south of Gladstone. On June 26th, 1936, she came to Gladstone with her father. They arrived in Gladstone about 5:30 P. M., and they parked their car not far from the alley in a vacant lot adjacent to a certain store. Her principal purpose in coming to town was to get a haircut, and after she had obtained a haircut she went back and sat in the car, and was sitting there, about 7:30 P. M., when the defendant, Hollinger, came by. The complaining witness was then almost eighteen years of age, and the defendant some two years older. They had known each other since they were small children. The complaining witness testified that Hollinger came and sat beside her in the front seat, and that after they had talked awhile he suggested that they sit in the back seat; that they did this. That thereafter he fondled and kissed her, and, also, had sexual intercourse with her. According to her testimony, the child was begotten as a result of such intercourse, and she did not have any other sexual intercourse on that day, or before or subsequent to June 26th, 1936, which could possibly have resulted in her pregnancy. The defendant denies that he had sexual intercourse with the complainant on June 26th, 1936. He admits, however, that he stopped at the car and talked with her. He, also, admits that he sat with her in the car. He, also, admits that he and she were alone for some time. But, he claims that he did not sit in the car except when some one else was present, and that when he and the complaining witness were alone, he stood outside and talked to her as she sat in the car. He claims that when he came by and stopped and talked to her he remained standing outside until another young man came by, and that then, at her suggestion, he entered the car and sat down beside her, and that from that time on some one else was always present.

It will be noted there is an irreconcilable conflict between the testimony of the complaining witness and that of the defendant upon the main fact. Did the complaining witness tell the truth, when she testified that the defendant had sexual intercourse with her at Gladstone on June 26th, 1936, and when she testified that no one else had had intercourse with her during the period of time that the conception must

have taken place? If so, the defendant testified falsely, and he is the father of the child.

The defendant contends that the testimony of the complaining witness, viewed in light of the facts and circumstances, is shown to be untrue, or in any event so improbable that it is insufficient to establish the charge against the defendant. Counsel for the plaintiff, on the other hand, points to certain incidents which he claims tends to corroborate the testimony of the complaining witness, and others which he claims tend to impair the testimony of the defendant. No good purpose would be subserved by entering into an extended discussion of these various incidents and circumstances. The trial court, after hearing and seeing the parties, concluded that the complaining witness told the truth. A careful reading of the evidence as contained in the record, and consideration of the incidents and circumstances on which the respective parties rely, lead us to the same conclusion. The testimony of the complaining witness seems frank and fair. She laid no undue blame on the defendant. Her statements as to what occurred are in no particular improbable, but rather bear the mark of truthfulness.

In support of the contention that the evidence is insufficient, appellant's counsel lays considerable stress on the testimony of a doctor that was called as a witness for the defendant. The complaining witness testified that the intercourse with the defendant took place about two days after her menstrual period, and the doctor testified that there was slight likelihood that a woman would become pregnant as a result of intercourse had at that time. However, the doctor admitted that such intercourse might result in pregnancy. If the complaining witness told the truth, the intercourse with the defendant did result in conception of the child that was born April 4th, 1937. The trial court found the facts to be as she testified, and we agree with the trial court.

(2) The law under which this action was brought provides:

"If the finding or verdict be against the defendant, the court shall give judgment against him declaring paternity and for the support of the child from the date of its birth." (Laws 1923, chap. 165, § 20; 1925 Supp. § 10,500a20.)

"The court may require the father to give security by bond with sureties, for the payment of the judgment. In default of such secu-

rity, when required, the court may commit him to jail. After one year the person so committed may be discharged (in accordance with the law relating to the discharge of insolvent debtors), but his liability to pay the judgment shall not be thereby affected." (Laws 1923, chap. 165, § 22; 1925 Supp. § 10,500a22.)

Defendant contends that the latter provision, and that part of the judgment in this case which requires the defendant to give security by bond for the payment of the judgment, and further provides that he may be committed to jail for failure to give such bond or make payment, infringe upon rights guaranteed to him by § 15 of the Constitution of this state, which provides:

"No person shall be imprisoned for debt unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law; or in cases of tort; or where there is strong presumption of fraud."

Defendant's counsel asserts that the judgment against the defendant for support is a debt; that the action is not one in tort; that there is no presumption of fraud and that consequently commitment of the defendant to jail for failure to give security by bond for payment or to make payment would be an imprisonment for debt in contravention of said § 15 of the state Constitution.

In our opinion, the judgment for support is not a debt within the purview of § 15 of the Constitution. The state has unquestioned authority to provide for the protection and education of all children within its borders. It likewise has authority to impose upon a parent the duty to support his or her child. The authority of the state in this aspect is certainly no less because the child was begotten and born out of wedlock. The extent of the legal obligation of a parent to his child, and the manner by which performance of that obligation shall be enforced, are matters primarily for the legislature.

The duty of a father to support his illegitimate child is not dependent upon contract. The relation of debtor and creditor does not exist between the father and the mother, between the father and the state, or between the father and his child. The obligation of the father to provide for his child in such case rests upon a foundation more elemental than that upon which a contract rests. It is a moral obligation which he owes both to society and to the child, and the legislature has

wide powers in fixing the extent of the legal obligation that results, and it has power to prescribe the method by which that duty may be enforced, subject only to the limitation upon legislative power fixed by the Constitution. The legislature may, if it so desires, prescribe that the obligation shall be enforced by a criminal action, or by a civil action, or by an action neither wholly criminal nor wholly civil, but having features and incidents of each. For as was well said by the great Chief Justice: "Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited but consistent with the letter and spirit of the Constitution, are constitutional." M'Culloch v. Maryland, 4 Wheat. (U. S.) 316, 4 L. ed. 579.

The courts generally hold that the obligation of a man to support his family and his children, or a judgment for the enforcement of such obligation, does not constitute a "debt" within the meaning of a constitutional guarantee against imprisonment for debt. Thus, the courts are in accord in holding that a man's obligation to support his family is not a debt within the constitutional guarantee against imprisonment for debt, and that consequently a statute making the failure of a man to support his family an offense punishable by imprisonment is not violative of such constitutional guarantee. Note in 48 A.L.R. p. 1195 and authorities cited therein. While there is some conflict, the great weight of authority sustains the rule that alimony is not a "debt" within the meaning of such constitutional provision (19 C. J. 301; 17 Am. Jur. 445, Divorce and Separation, § 559), and this is the rule approved by this court in Gross v. Gross, 53 N. D. 480, 485, 206 N. W. 793, 795. And the rule established by the great weight of judicial authority is that a judgment for the support of an illegitimate child, rendered in an appropriate action against a man who in such action is adjudged to be the father of such child, is in no proper sense a debt within the constitutional provision against imprisonment for debt. Rich v. People, 66 Ill. 513; Re Wheeler, 34 Kan. 96, 8 P. 276; Musser v. Stewart, 21 Ohio St. 353; Lower v. Wallick, 25 Ind. 68; State v. Brewer, 38 S. C. 263, 16 S. E. 1001, 19 L.R.A. 362, 37 Am. St. Rep. 752; Ex parte Bridgforth, 77 Miss. 418, 27 So. 622, 78 Am. St. Rep. 532; Land v. State, 84 Ark. 199, 105 S. W. 90, 120 Am. St. Rep. 24; State

v. Morgan, 141 N. C. 726, 53 S. E. 142; Coan v. State, 25 Ala. App. 62, 141 So. 262; 7 C. J. pp. 1003, 1004, § 150; 7 Am. Jur. 710–711, Bastards, § 133.

Judgment affirmed.

NUESSLE, Ch. J., and MORRIS, BURKE, and BURR, JJ., concur.