[File No. 6456.]

AMY JANE KARTEUS, Respondent, v. EMIL A. KARTEUS, Appellant.

(272 N. W. 185.)

Opinion filed March 9, 1937.

*E. R. Sinkler* and *G. O. Brekke,* and *Olaf Braatelien,* for appellant.
*Thos. C. Jepsen,* for respondent.

MORRIS, J. On the 5th day of March, 1935, the district court of Divide county, North Dakota, entered a judgment granting the plaintiff a divorce from the defendant. During the pendency of the action the parties entered into a stipulation for a "property settlement" which provided that in event that the plaintiff should be granted a divorce, the defendant would pay the plaintiff "as alimony, the sum of $40.00 per month, from the time such divorce is granted." The stipulation also provided for a division of the property of the parties giving to the plaintiff an automobile and household goods, and to the defendant certain lots in the village of Westhope, Bottineau county, North Dakota. The defendant agreed to pay the costs and attorney's fees of the action. The stipulation contains this provision, "It is further understood and agreed that this agreement shall be filed with the court and shall be used by the court in determining a settlement of the property and fixing alimony should a divorce be granted in this action." At the trial of the case, which was uncontested, the stipulation was marked as an exhibit and introduced in evidence. The court incorporated in its findings of fact the essential portions of the stipulation and found

as a conclusion of law, "that the parties are entitled to have settlement of property with alimony to plaintiff in accordance with the terms of their said written agreement," and ordered judgment accordingly.

It appears that the defendant has not made any of the monthly payments provided in the divorce decree since April, 1936. Contempt proceedings were instituted by the plaintiff which culminated in a judgment finding the defendant guilty of contempt for having wilfully disobeyed the decree of March 5, 1935 in failing to make the payments of alimony therein required, and adjudging as punishment therefor that the defendant pay the plaintiff the sum of $200.00, which is the amount of past due alimony and costs, and in default thereof be committed to jail not to exceed sixty days.

Section 4405, Compiled Laws 1913, provides that, "When divorce is granted, the court shall make such equitable distribution of the property of the parties thereto as may seem just and proper and may compel either of such parties to provide for the maintenance of the children of the marriage, and make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects."

The appellant contends that the decree in this case insofar as it provides for the payment of $40.00 per month to the plaintiff, rests wholly upon the stipulation; that even though the stipulation is incorporated in the decree it is nothing more than a contract; and that the decree in this respect is not a judicial determination of the property rights of the parties or the right of support under § 4405; and that since the obligation of the defendant to pay rests wholly on a contract it cannot be enforced by contempt proceedings, and any attempt to imprison the defendant in such proceedings violates the prohibition against imprisonment for debt contained in § 15 of the State Constitution.

It is argued that the facts in this case are substantially the same as those in Sinkler v. Sinkler, 49 N. D. 1144, 194 N. W. 817, wherein it was said that, "The contract between the parties upon which the award of permanent alimony, so-called, is based, clearly indicates an

intention to adjust finally all the property rights of the parties to the marriage. . . . We think that the court, having in mind and before it the contract of the parties according to the terms of which the wife transferred all her interest in the husband's property and assumed definite obligations to support the children, had in mind that a decree for the sum of $225, per month, together with the cash payment and the award of specific personal property, with a provision in the contract for the confession of judgment and enforcement thereof by execution as in cases of ordinary judgment, should be considered in legal effect the same as if an allowance of a gross sum had been made, or a judgment entered, making a final distribution of the estate of the parties."

In that case it was held that the district court, in accordance with the agreement of the parties, had intended to and did enter a decree which finally adjusted their property rights and that the court could not several years later modify its final judgment so made except upon grounds on which ordinary judgments might be modified, vacated, or set aside. The Sinkler case does not hold, as the appellant seems to argue, that a decree when originally based as far as the provisions therein for the support of the wife are concerned, upon the agreement of the parties may not be subsequently modified by the court under the provisions of § 4405, supra. The court specifically refrained from passing upon that question and cited a number of authorities holding both ways. See also Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A.L.R. 634, and note.

The stipulation in this case differs from that in the case of Sinkler v. Sinkler, 49 N. D. 1144, 194 N. W. 817. In that stipulation a monthly sum agreed to be paid was termed "as and for permanent alimony." It further provided that the agreement should be construed as a confession of judgment if the husband defaulted in any payments and upon a prescribed showing of default an appropriate order for judgment could be made and a judgment entered accordingly; that judgments so entered were liens upon the real property of the husband and an ordinary execution might issue thereon. It was also stipulated that "neither party shall at any time apply to any court to either decrease or increase said alimony," which provision was incorporated in the decree. In this case none of the provisions

above enumerated appear in the decree or in the stipulation which provides that it "shall be used by the court in determining a settlement of the property and fixing alimony."

While the stipulation covers both a division of property and the amount to be paid for maintenance of the wife, it does not show that the "alimony" agreed upon was based upon the surrender of any of her property rights. The decree contains nothing to indicate that the trial court considered that the parties had made a final distribution of their estate as was done in the Sinkler case. On the other hand, it appears that the stipulation was an agreement which was to be submitted to the court for his advice and guidance in exercising the powers vested in him under the statute. The decree lost none of its effectiveness because the court accepted in toto the provisions of the stipulation instead of modifying them as he unquestionably had a right to do. The court, by determining that the stipulation was fair and entitled to be incorporated in the decree, did not deprive the decree of any of its statutory attributes as a mandate of the court. The stipulation does not indicate that the parties intended that the decree in this action might be enforced in any other manner than the usual decree in a divorce action, or that it would lack any of the normal powers of enforcement which a decree rendered under § 4405 might have.

A decree rendered pursuant to Section 4405 requiring the payment of maintenance in a divorce action may be enforced through contempt proceedings. Gross v. Gross, 53 N. D. 480, 206 N. W. 793; Tripp v. Superior Ct. 61 Cal. App. 64, 214 P. 252. The appellant, in his brief, cites and quotes from the case of Glynn v. Glynn, 8 N. D. 233, 77 N. W. 594. That case does not apply to the facts before us. In that case a divorce had been granted to the husband for the fault of the wife under a statute whereby the court had no power to make any allowance by way of support or maintenance of the wife. The husband, however, agreed that he would pay the wife a certain sum per month, and that an order to that effect might be entered in the decree, which was done. The wife then sought to enforce payment through contempt proceedings. The court held in substance that the provision for payments in the decree was not based upon any statutory power of

302

the court, but arose from an express contract and that payment could not be enforced through contempt proceedings. In this case the court had full power to make the decree as he did, had there been no stipulation. There being nothing to the contrary in the stipulation or elsewhere in the record, we will assume that the parties did not intend that the decree should have any more or any less compelling force behind it than the statute contemplates.

Appellant also contends that the court erred in finding the defendant in contempt because the defendant has demonstrated his inability to comply with the court's order by making the required payments. Inability to comply with the court order is a defense in contempt proceedings. Nicholson v. Nicholson, 53 N. D. 591, 207 N. W. 486; State v. Babcock, 64 N. D. 288, 251 N. W. 849; Laff v. Laff, 161 Minn. 122, 200 N. W. 936. The facts do not support the defendant's contention. It is undisputed that he draws a salary of $176.90 a month, and that he has paid the plaintiff nothing since April, 1936. His excuse is that he remarried in September, 1935, and that he cannot maintain his home according to a decent American standard of living and still continue to pay his divorced wife $40.00 per month. In support of this he submits an itemized statement of his monthly expenses which amount to $169.50. We will not analyze this statement in detail, but it is apparent therefrom that the trial court was justified in finding that it does not establish inability to comply with the court order. The evidence is ample to sustain the finding that the defendant is guilty of contempt.

Affirmed.

Christianson, Ch. J., and Burr, Nuessle, and Burke, JJ., concur.