## GIBSON *v.* CLARK.

Feb. 2, 1953

No. 38610        18 Adv. S. 31        62 So. 2d 585

*Paul G.* and *Raymond Swartzfager,* for appellant.

*Grover C. Doggette* and *Collins & Collins,* for appellee.

LOTTERHOS, J.

Appellant and appellee, formerly husband and wife, were divorced by decree of the Chancery Court of Jones County on February 4, 1947. Appellee was given custody of their twin sons, then three years of age. The decree granted to her $50.00 per month as alimony and $50.00 per month for the support of the children, payable semi-monthly, beginning February 15, 1947. The proceeding now under review arose on a petition filed by appellee in the same court on January 2, 1952, alleging that appellant owed her $3,490.00 plus interest under the decree and that he contemptuously failed and refused to pay that amount, and praying that appellant be adjudged in contempt of court therefor and punished. Other pertinent parts of the petition will be referred to later in this opinion.

Appellant was taken into custody under a writ of *ne exeat,* made bond, and appeared for the trial at the February, 1952, term of court. At the conclusion of the

trial, the court found appellant in arrears for child support in the amount of $2,680.00, but that he was not in contempt for failure to pay $500.00 thereof because of inability to make payments during a period of ten months, found that he was in contempt of court with reference to failure to pay child support in the sum of $2,180.00, and ordered that appellant be imprisoned until he shall have purged himself of contempt by paying $2,180.00 and costs. From this decree, appellant has appealed and he has executed bond for his release from custody, pending the appeal. Appellee has cross-appealed, claiming that the court below should have allowed to her alimony accrued and unpaid, as well as support money for the children, and also interest.

The facts developed in the proof, to the extent necessary in the decision of this case, are outlined as follows: Appellee married a Mr. Clark one year after the divorce decree. Appellant remarried about October, 1951. At the time of the divorce in February, 1947, appellant was in New Orleans, working for a truck line. He remained in that employment about four months after the divorce; then entered the Veterans Hospital at New Orleans for several months; operated a taxi in the same city for a considerable time, first, for approximately two months, with a car that he was attempting to purchase, and then as a driver for another man; worked in a restaurant and bar in New Orleans, in which he owned a half interest, according to appellee; and was in the employment of a New Orleans contracting firm for some months. Appellant then, in February, 1950, returned to Jones County, Mississippi, where appellee had remained, and worked three months in a soft drink and beer place, and then at a "honky-tonk" until September, 1950. Thereafter, appellant went to Shreveport, Louisiana, and worked either in a hotel or a bar until about December 31, 1951. He lost that job on account of being away in connection with

the proceeding instituted by appellee, and was not employed at the time of the trial.

There was conflicting testimony with respect to the earnings of appellant during his various employments, the proof on his behalf showing from $20 to $50 per week at different times, and that of appellee showing from $50 to $100. There was no evidence nor any examination with respect to property, if any, owned by appellant at the time of the trial, except in insignificant particulars, such as the cost of the suit of clothes he was wearing.

Appellee testified that since the divorce, appellant had paid her only $60.00, and had done nothing else for her and the children except send a few clothes and two bicycles for the boys, although she had repeatedly attempted to get him to comply with the original decree; that she had made no agreement with him in modification of the decree; and that appellant had stated in effect that he would not pay her anything. To the contrary, appellant testified that he had given appellee considerable money from time to time (as much as he could), although the details and exact amounts were vague except in a few small instances; that he and appellee remained friendly, and she stated that he was doing all he could for the boys; that there was some sort of agreement or understanding between them that the decree would not be enforced according to its terms; and that he had not stated he would not pay her anything.

We come now to the points of law involved on this appeal. Appellant first makes the contention that the petition filed by appellee is insufficient to justify the imposition of punishment as for a contempt of court, because it fails to allege that petitioner had exhausted the possibilities of collecting the amounts due her by normal process, such as writs of execution and garnishment, or that the issuance of such process would have been futile. He also claims that there was no proof along these lines.

Reliance is placed on Amis, Divorce and Separation in Mississippi, to support the claimed rule, citing Section 277. It is obvious that Judge Amis was not referring to the power of the court, but was discussing the factors which should guide a chancellor in exercising the power to punish for contempt. In Section 275, he states his approval of those cases which hold that though the power exists, it should not be exercised, if other process of the court is adequate for enforcement of the payment of alimony. ■■ ■ Regardless of the extent to which a court should properly withhold exercise of the power to punish for a contempt in the enforcement of a decree for alimony when other means are available, the court below was clearly justified in acting upon the petition here, because it alleged and the answer admitted that appellant had no property in Mississippi subject to execution, and the proof showed that appellant was · in Louisiana during the five years after the divorce except for about six months in 1950.

Appellant contends that the court should have sustained his claimed defense of laches and of an agreement supplanting the original decree, and a motion for clemency filed after the date of the contempt decree. There is no merit in any of these claims, as they are not sustained by the proof.

The only substantial attack upon the decree, and the one which we have concluded must be sustained, is based upon the question of the ability of appellant to pay the sum of $2,180.00, which payment is made the condition of his release from jail. It should first be stated that the proof is adequate to sustain the trial court's finding that appellant was guilty of civil contempt in failing to make payments as required by the original decree. But that leads us to the question of what appellant should be required to do to purge himself of the contempt.

The evidence shows that appellant had been employed at various jobs during the five years prior to the trial.

He worked for a truck line, drove a taxi, worked in bars and similar places, and performed some sort of service for a contracting firm. It is quite apparent from the whole record that he was dependent upon his earnings for his income rather than upon the ownership of property. In fact, as previously pointed out, it is alleged in the petition and admitted in the answer that he owned no property in Mississippi subject to execution. He was unemployed at the time of the trial. Under such circumstances, what means would appellant have to raise $2,180.00 in order to purge himself of contempt and obtain his release from jail?

It has frequently been stated in cases of this kind that the person charged with contempt has the burden of proving his inability to make the payments directed. Ramsey v. Ramsey, 125 Miss. 185, 87 So. 491. Nevertheless, when the entire record indicates, as it does here, that the person found guilty of contempt probably has insufficient means to make the payment required, and when the question of present ability to pay has not been adequately developed in the proof, a case should be remanded in order that an amount within the ability of the person to pay, may be fixed. The case at bar is almost identical with Lewis v. Lewis, 213 Miss. 434, 57 So. 2d 163, recently decided, wherein it was said:

". . . But the question of whether or not he had the present ability to pay the sum of $700 at the time he was adjudged in contempt so as to purge himself of said charge is left somewhat in doubt in the record before us for the reason that the appellant as the only witness in the case was not interrogated, and he failed to testify, as to what property, if any, he then owned. The proof only disclosed that he earned approximately $50 per week as a watch and jewelry repairman, and whether he operated his business in his own or in a rented place does not appear. So far as the record discloses, he may

or may not own an automobile or other personal property and real estate on which he could raise the sum of $700.

"It is true that the failure of the husband to comply with the decree providing for payment of alimony is prima facie evidence of contempt, to purge which the burden is upon him to prove his inability to pay, as held in the case of Ramsey v. Ramsey, 125 Miss. 185, 87 So. 491, 14 A. L. R. 712; but it is also true, as held in that case and in the cases of Collins v. Collins, 171 Miss. 891, 158 So. 914, and Dickerson v. Horn, 210 Miss. 655, 50 So. 2d 368, that the court's power to commit a divorced husband to jail until he complies with the decree requiring him to make monthly payments for support and maintenance depends on his then present ability to comply with the decree, and that, in determining such ability, the amount of past earnings and how they have been expended is not controlling. The Court therefore is reluctant to affirm the decree of imprisonment in the absence of satisfactory proof that the defendant in the contempt proceeding could have purged himself of contempt by paying the full amount in arrears in a lump sum, as ordered to do. We therefore conclude to reverse and remand the cause for full proof on that issue in view of what is said in the three cases above cited."

Applying the same rule here, we hold that this case should be remanded so that the court below may hear further testimony and then fix a sum within the ability of appellant to pay as the amount to be paid by him to purge himself of the contempt which has been adjudged.

On the cross-appeal, appellee urges that the court below erred in relieving appellant of the payment of alimony accrued before appellee's marriage to Mr. Clark and of the payment of interest on the accrued alimony and child support. This court has aligned itself with those which hold that after alimony has accrued there is a vested right thereto, and that interest is allowed thereon. Guess v. Smith, 100 Miss. 457, 56 So. 166; Schaffer v. Schaffer,

209 Miss. 220, 46 So. 2d 443. However, we do not think that the decree had the effect of absolving appellant from his liability for all accrued and unpaid installments, with interest, but that it simply eliminated part of the amount due from consideration in the contempt proceeding as a basis for punishment for contempt. This was within the scope of the court's discretion. Therefore, we conclude that the cross-appeal is not well taken.

On direct appeal, affirmed in part and reversed in part; on cross-appeal, affirmed: and remanded.

*Roberds, P. J.,* and *Kyle, Holmes* and *Ethridge, JJ.,* concur.